## BOWMAN *vs.* PAGE.

### APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard April 23.]                              [Decided June 4, 1860.

*Contract—Fraud—Equity.*

Where W. bought lands of B., and paid a grossly inadequate consideration for the same, if the same had been free and clear of all incumbrances; but it appeared that the land was incumbered by tax liens and mortgages, which were known to W. to be in existence, and that the purchase was made in view of these liens and risks, the court will not declare that such a contract was made for an inadequate consideration.

Where W. was possessed of lands on which there were incumbrances of a mortgage and taxes, of which he was made acquainted by other parties, and being unable or unwilling to incur the expense and trouble of litigation to perfect the title, sold the same for such price as he could obtain. A court of equity will not, upon evidence of such facts, set aside the deed, on the grounds of an alleged fraud in the purchaser.

This was an action commenced by Royal Bowman, against Page and Waldo, by bill in chancery, to compel them to give up and surrender, two deeds made by the complainant and his brother, Walter Bowman, conveying an eighty acres of land to the defendants. The complainant claimed that he could establish that in the year 1838, Baxter Bowman, a brother of the complainant, died in the city of Toledo, Ohio,

seized of the following described real estate, situated in the county of Milwaukee, viz.: The west half of the north-west quarter of section 18, township 7, north of range 22, now embraced within the corporate limits of the city of Milwaukee. By his last will and testament, he devised this land, in terms, to his brother, Walter Bowman, but described it as " being the same land conveyed to me by Leonard Willard by deed, dated March 9, 1836." In the same instrument he devised, in like terms, the same tract to his brother, Royal Bowman, the complainant, but described it as "being the same land conveyed to me by Stephen B. Comstock, by deed, dated June 17, 1836."

It appeared, on consulting the records, that the testator had acquired, by deeds of the dates named, one-half the premises . each, from Willard and Comstock; thus leaving the intention apparent to devise a moiety of the land to each of the brothers Walter and Royal.

At the time of the devise, the whole premises were mortgaged to M. and E. Cawker, for $400, maturing on the 13th February, 1836; and it appeared by admission, that the mortgagees, or those claiming under them, had been in possession of the whole of the premises for a number of years prior to 1857. No title or right to possession however, appeared, other than as assignees of the mortgage. It did indeed appear that several tax titles had been acquired by the mortgagees, or those claiming under them, whilst in possession.

Messrs. Waldo and Ody, of Milwaukee, became aware of the situation of the premises, and took steps to learn the whereabouts of Baxter Bowman, in whom the legal title stood of record. Through the agency of the defendant, Page who was to have an interest, if the legal title could be obtained, the death of Baxter, the fact that he had left a will, and the residences of the devisees, Walter and Royal, were ascertained.

Walter Bowman resided in the state of Vermont and Royal in New Hampshire. Neither of them had ever seen the land, and they knew nothing of its value or situation. Page went to Vermont, and by means of various deceitful practices and representations, procured a conveyance of Walter's interest, by deed, with personal covenants for the consideration of *one hundred dollars ;* from thence he proceeded to the residence of Royal, in New Hampshire, and by means of

similar representations, procured from Royal a conveyance by like deed of his interest, for the consideration of *fifty dollars*. Both deeds were to the defendant Levi Fay Waldo. This occurred in the month of October, 1855. The land at that time was worth at least three hundred dollars per acre. Subsequently Walter made a deed to Royal for a nominal consideration.

The testimony being closed, and the case submitted, the Judge filed his decision as follows:

I find the following facts established by the proofs or admissions of the parties. That Baxter Bowman, at the time of his death, was seized of the premises set forth in the pleadings and in the conveyance of the plaintiff, to the defendant Waldo, which the plaintiff has filed his bill to set aside, and that there was a mortgage on the premises to secure the payment of $400, dated February 3d, 1836, which has neither been foreclosed nor paid; and that the mortgagees, or those 'claiming under them, have been in possession of said premises since the death of said Bowman; that several times said premises since 1840 have been sold for taxes, and the said mortgagees or their representatives, have taken tax deeds therefor, and now hold the same. In 1855 the said premises were worth from $300 to $400 per acre, or in the aggregate from $24,000 to $32,000.

In 1838 the said Baxter Bowman made his last will and testament, a copy of which is attached to the testimony of Herman L. Page. That Walter Bowman resides in New Hampshire, and the plaintiff in Vermont, and that neither of them have ever seen or been near the premises in question; nor does it appear that they had reliable information for several years previous to 1855, in regard to the condition of the title, or uses of the property. I have found some difficulty in coming to a satisfactory conclusion as to the allegations in the bill setting forth fraudulent representations made by Page to the plaintiff. That Walter Bowman conveyed his undivided interest to the defendant Waldo for $100,00, and the plaintiff for $50,00. The testimony of Page conflicts with the plaintiff's witnesses as to the nature of those representations; and as I will dispose of the case upon other grounds, it will not be necessary for me to pass upon this branch of the case.

I am of opinion that one of the obligations of the mortgagees in possession was to pay the taxes, and neither he nor his representatives could derive any benefit from allowing the

land to be sold for taxes and procuring the tax deed. The payment of taxes by a mortgagee in possession, is a necessary expenditure, for which he would be allowed on accounting. He is bound to guard and defend the title. 4 Kent, 166-7, and note *a.* He would be allowed no benefit from the deed, and I doubt whether he would be allowed the costs or expenses of redeeming them, as it was his duty to have paid them when due. It follows that as against Royal Bowman the tax deeds were of no efficacy to divest his right to redeem the premises upon paying the mortgage and the taxes, the only incumbrance upon the land therefore, was the mortgage; and when that was removed, the title would be clear, with the equitable right of the mortgagee to have the amount of the taxes paid by him refunded. The tax deeds, therefore, in the hands of the mortgagee, did not materially diminish the value of the plaintiff's title. I am of opinion that the sum of $50,00 paid by the defendant to the plaintiff for his conveyance, is a grossly inadequate price. His interest was one undivided half of the 80 acres, worth $300 to $400 per acre, and this was subject only to its proportionate share for the mortgage of $400, interest and taxes. If inadequacy of price can ever afford a ground of relief, or if it can ever from its grossness, demonstrate that the party has been unduly misled, it must surely be such a case as this. Here is property worth from $12,000 to $16,000, with a redeemable incumbrance of $400, interest and taxes, sold for $50. It is impossible to state it to a man of common sense, without producing an exclamation as to the inequality of it. No man in his senses, and having a knowledge of the facts, would make such a bargain. In my opinion, a court of equity ought not to allow any benefit or advantage to be derived from such a trade.

Judgment must be rendered for the plaintiff, setting aside the deed made by the plaintiff to the defendant Waldo, but the conveyance of Walter Bowman cannot be set aside at the instance of the plaintiff.

Judgment was entered according to this finding, from which the defendants appealed.

*Waldo & Downer*, for the appellants.

*Emmons & Van Dyke* for the respondent.

*By the Court,* COLE, J. We are compelled to differ with
the circuit judge in his conclusions upon the evidence in this
case on two points : 1st. That while the amount paid by the
appellant, Waldo, for the interest of Royal Bowman in the
property, mentioned in the pleadings, was grossly inadequate
to the value of the land free and clear from incumbrances,
and the title not in dispute, so much so that if it stood unex-
plained it would lead a court of equity strongly to doubt the
*bona fides* of the transaction, still the evidence clearly and
satisfactorily shows that the property was not in this condi-
tion, but that tax liens and other incumbrances existed upon
it ; that all this was well known and understood by the par-
ties; that they contracted with each other in view of these
liens and of the risk and hazard and expense of litigating for
a doubtful and disputed right or interest in the property; so
that in truth it is hard to say whether this amount paid was
inadequate or not.

And 2d. It is far from being established by the evidence,
that Bowman confided in or trusted to any representations
made by Page, whatever they were, at the time of sale, in re-
gard to the situation, condition and value of the property, or
of his interest therein, but on the contrary, we think that the
testimony shows that he acted on information previously ac-
quired from agents and others ; that he knew that the land
was situated near Milwaukee, and was valuable, but that the
taxes had not been paid, and that the property was under a
mortgage at his brother's death ; that this mortgage still sub-
sisted and must be discharged ; and that he was unable or
unwilling to encounter the expense and trouble necessary in
order to perfect his title and therefore sold his interest for the
best price he could obtain.

This is our view of the evidence and of the facts establish-
ed by it, and we therefore think the circuit court improperly
set aside the deed from the respondent to the appellant, Waldo,

on the ground of alleged fraud, and misrepresentations practiced by Page upon him, at the time of the purchase.

So much of the judgment of the circuit court as sets aside and declares void that conveyance, must be reversed, and the cause remanded for further proceedings in conformity to this opinion.